**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

BRYAN SCOTT SPRADLIN,      )
          )
          Plaintiff,      )
          )    Case No. 12-CV-497-JED-FHM
v.          )
          )
CITY OF OWASSO et al.,      )
          )
          Defendants.      )

<u>**OPINION AND ORDER**</u>

Before the Court are dismissal motions (Doc. 7, 8) filed by the defendants in this action. The Court has considered all of the parties' dismissal briefing, and the Court held a hearing on the motions.

**I.**      **Background**

The following facts are alleged in plaintiff's Complaint. On June 30, 2011, while at his wife's home in Owasso, several Owasso police officers arrived. Officers shoved him to the ground, handcuffed him, then "savagely, unreasonably, and unjustifiably assaulted and battered" him. The officers' actions constituted unreasonable and excessive force against plaintiff under the Owasso Police Department policy regarding excessive force. Certain of the officers participated in the assault, while others watched and did not intervene. As a result of the brutality, the plaintiff suffered injuries and was bleeding. (Doc. 2 at ¶¶ 21-30).

Plaintiff was arrested and taken to the Owasso police station, where he was further subjected to "savage, excessive, humiliating, and demeaning treatment" from the officers. An unknown officer (whom plaintiff identifies as John Doe) violently either kicked or shoved plaintiff while walking up the steps to the police station, causing plaintiff's face to hit the concrete and sustain additional injuries. As he lay on the concrete, other officers who witnessed

the event came to assist the John Doe officer, and one of the assisting officers stepped on plaintiff's neck, grabbed his handcuffed hands and pulled them up and over plaintiff's head.  The officers then carried plaintiff, by the handcuffs and his feet, into the police station.  He complained of brutality while being carried into the police station, but none of the officers came to his aid.  The officers carried him into the police station in a way that slammed his head against a door frame. (*Id.* at ¶¶ 31-39).

Once inside the police station, plaintiff was allowed to stand and walk behind defendant Officer Mike Denton.  Denton "violently 'elbowed' plaintiff in the face, waited two seconds, elbowed [him] again, and then did so a third time a second later."  Other officers witnessed these incidents and none intervened or attempted to stop this unreasonable and excessive force, and they ignored plaintiff's visible, bleeding injuries and failed to provide immediate medical attention.  Plaintiff did not receive medical attention until 48 hours later, when he was transported to the hospital for examination and treatment.  Plaintiff suffered from numerous injuries, including facial cellulitis, due to the failure to secure timely medical attention.  (*Id.* at ¶¶ 40-46).  The officers involved in the incidents of June 30, 2011 were defendants Wolery, Foyil, Denton, and Pitt.  (*Id.* at ¶ 65).

Based upon the allegations of excessive force, plaintiff asserts claims under 42 U.S.C. § 1983 for alleged violations of his Fourth and Fourteenth Amendment rights, and under the Oklahoma Constitution, to be free from excessive force, and tort claims for assault and battery, intentional infliction of emotional distress, negligent hiring/training/supervision, and vicarious liability.  (*Id.* at 66).

In addition, plaintiff seeks rescission of a Release of Claims that he signed on October 13, 2011.  The Release of Claims was presented to him by Owasso Police Chief Yancey and

defendant Dempster (the City of Owasso Human Resources Chief) while plaintiff was incarcerated in the David L. Moss Criminal Justice Center (Tulsa County Jail).  According to the plaintiff, at the time the Release of Claims was presented to him, he was suffering from the mental and physical effects of the assault by the Owasso police officers, and he had no opportunity to consult with an attorney or family members regarding any such release. Defendants Yancey and the City of Owasso had allegedly determined, approximately a week before presenting the Release of Claims, that the actions of defendant Denton toward the plaintiff on June 30, 2011 were excessive, unjustified, and contrary to City policy.  Plaintiff also alleges that, when the Release of Claims was presented to him, he was in jail for a failure to pay fines and that, of the $1500 paid by the City of Owasso in exchange for a release of all of his claims against the Owasso Police Department and any of its employees arising out of his arrest on June 30, 2011, $1107.00 went to the City of Owasso to pay plaintiff's fines and costs from the June 30, 2011 arrest, and the other check for $493 remains uncashed.  (*Id.* at ¶¶ 51-61).

## II.    Dismissal Standards

In considering a Rule 12(b)(6) dismissal motion, a court must determine whether the plaintiff has stated a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  The Federal Rules of Civil Procedure require "a short and plain statement of the claim to show that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The standard does "not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level."  *Id*. at 555-56, 570 (citations omitted).  "Asking for plausible grounds . . .

3

does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id*. at 556. "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 562.

*Twombly* articulated the pleading standard for all civil actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009).  For the purpose of making the dismissal determination, a court must accept all the well-pleaded factual allegations of the complaint as true, even if doubtful, and must construe the allegations in the light most favorable to the claimant.  *See Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

**III.    Analysis**

      *A.    Mike Denton's Motion to Dismiss*

          *1.    Release of Claims*

Defendant Denton seeks dismissal based upon the Release of Claims with the City of Owasso.  Denton asserts that the Supreme Court's decision in *Newton v. Rumery*, 480 U.S. 386 (1987) requires that the Court enforce the Release of Claims and thereby dismiss the Complaint. *Newton* does not compel dismissal of plaintiff's Complaint here.  The Supreme Court in *Newton* reversed the First Circuit's determination that *all* release-dismissal agreements were *per se invalid* as a matter of federal public policy, but noted that "in some cases these agreements may infringe important interests of the criminal defendant and of the society as a whole."  480 U.S. at 392.  Thus, such agreements are analyzed on a case-by-case basis.  *See id.*; *see also Hammond v. Bales*, 843 F.2d 1320, 1322 (10th Cir. 1988).  *Newton* does not support Denton's argument that

4

all releases are enforceable as a matter of law.  The Court in *Newton* recognized that "some release-dismissal agreements may not be the product of an informed or voluntary decision." *Newton*, 480 U.S. at 393.  Unlike in *Newton*, the Release of Claims at issue here is not a release-dismissal agreement and, even assuming the public policy analysis of *Newton* applies to the Release of Claims here, the facts in *Newton* bear no resemblance to the circumstances alleged in the Complaint as to the presentation and execution of the release.  Here, plaintiff has alleged facts which, if true, could support a finding that the release was *not* informed or voluntary.

Denton dismissively asserts that the benefits to plaintiff here were much greater than the benefits received by the releasing party (Rumery) in *Newton*, because plaintiff received money while (according to Denton) Rumery "received nothing."  (Doc. 24 at 5).  Denton's contention that Rumery "received nothing" is directly contrary to the Court's decision in *Newton*.  "The benefits of the agreement to Rumery are obvious: he gained immunity from criminal prosecution in consideration of abandoning a civil suit that he may well have lost."  480 U.S. at 394.  Based on the plaintiff's allegations, the Court does not agree that any benefit to plaintiff from the Release of Claims was greater than, or even equivalent to, the valuable benefits provided to Rumery in *Newton*, as plaintiff here did not receive immunity from suit or release from jail.

Moreover, in *Newton*, several facts were found to support a finding that Rumery voluntarily entered the release-dismissal agreement, and those facts are absent here.  In determining the agreement was voluntary, the Court in *Newton* relied upon the following:

> In many cases a defendant's choice to enter into a release-dismissal agreement will reflect a highly rational judgment that the certain benefits of escaping criminal prosecution exceed the speculative benefits of prevailing in a civil action. Rumery's voluntary decision to enter this agreement exemplifies such a judgment. Rumery is a sophisticated businessman.  He was not in jail and was represented by an experienced criminal lawyer, who drafted the agreement.   Rumery considered the agreement for three days before signing it.  The benefits of the

5

agreement are obvious: he gained immunity from criminal prosecution in consideration of abandoning a civil suit that he may well have lost.

*Id.*  In stark contrast, plaintiff *was* in jail and had been in jail for several days, he did *not* have the benefit of an attorney to counsel him regarding the release, and the Release of Claims was *not* drafted by plaintiff's attorney, but was presented to him by the Chief of Police, the boss of the very officers who plaintiff alleges brutalized him before, during, and after his arrest on June 30, 2011.  According to plaintiff, he had no advance notice of the Release of Claims that was presented by the City, and he had less than five minutes to consider the agreement, whereas Rumery's own counsel initiated drafting after engaging in direct negotiations, and Rumery had three days to consider the agreement before signing it.  As noted, plaintiff did not receive immunity or release.  He received two checks: one for $1107, which was immediately endorsed over to the City of Owasso; and a second for $493, which plaintiff alleges was never cashed.

Additional facts here, which were not present in *Newton*, further convince the Court that, taking plaintiff's allegations as true, the Complaint states a plausible claim for rescission based upon an assertion that the Release of Claims was not informed and voluntary, or free from duress, undue influence, or coercion.  Plaintiff alleges that he was suffering from psychological distress and the after effects of the alleged abuse by police officers.  (Doc. 2 at ¶ 52).  He had been in jail for approximately a week, was unemployed, and had no opportunity to consult with an attorney or his family.  (*Id.*).  According to Denton, these allegations are "too convenient" and "not true."  (Doc. 8).  At this stage, the plaintiff's factual allegations are taken as true, and the Court is not to make a credibility determination as to what is "true" or "convenient."  *See Twombly*, 550 U.S. at 555; *Alvarado*, 493 F.3d at 1215.

Based upon the allegations of plaintiff's Complaint, the potential merit and value of plaintiff's § 1983 (and other) claims are arguably greater than Rumery's,.  Rumery had been

6

arrested after alleged witness tampering, and he indicated he would challenge the basis for his arrest, but there was no indication that he had been physically injured or the subject of excessive force during the arrest.  By comparison, plaintiff alleges that, following an investigation, as of October 5, 2011, defendant Yancey and the City of Owasso found that plaintiff had suffered excessive force at the hands of one or more of Yancey's police officers and, in particular, Denton.  This fact potentially rendered plaintiff's claim of excessive force less "speculative" than Rumery's civil claim.  Based on the foregoing and taking plaintiff's allegations in the Complaint as true, the Court cannot determine at this stage that the Release Agreement is enforceable as a matter of law.

## 2.    *Improper Submission of Evidence Outside of the Pleadings*

Generally, the sufficiency of a complaint must rest solely on its contents.  *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).  There are three limited exceptions, which permit a court to consider: (1) documents that the complaint incorporates by reference; (2) "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity," and (3) "matters of which a court may take judicial notice."  *Id.* (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) and *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

Notwithstanding these well-established rules, in his dismissal briefing Denton repeatedly invites the Court to examine and weigh evidence outside of the pleadings.  For example, Denton's dismissal brief begins with a "Statement of Undisputed Facts" which includes a reference to an arbitrator's findings relating to Denton's termination from the Owasso Police Department and the arbitrator's determination that Denton should be reinstated.  (*See* Doc. 8 at 2-3).  Not only is the arbitrator's decision outside of the pleadings, but it also references

numerous exhibits and testimony or interviews that are not identified in the Complaint. (*See id.*). The attachment of such a document in this case obviously does not fall within any of the exceptions to the general rule that consideration of a dismissal motion is limited to the pleadings. *See Gee*, 627 F.3d at 1186. Moreover, the plaintiff in this case *was not a party to that proceeding* (*see* Doc. 8-3 at 1 [identifying the Fraternal Order of Police, Mike Denton, and the City of Owasso as the parties]), and the arbitrator's decision does not estop plaintiff from litigating issues related to any determinations made by the arbitrator.[1]

Denton and his counsel also provided a DVD, which contained a copy of a recording of plaintiff being transported from the Owasso Jail to the hospital and then to the Tulsa County Jail on July 2, 2011. Denton argues that the July 2, 2011 video establishes that plaintiff could not have been in distress when he signed the Release of Claims over three months later. To accept that argument, the Court would have to act as a fact finder, weigh the evidence completely in favor of Denton, and determine that plaintiff was not distressed in the July 2, 2011 video and could not have been distressed at any time after that video, without even providing the plaintiff an opportunity to provide other evidence. The submission of the DVD was inappropriate in support of a Rule 12(b)(6) motion, as it is improper for the Court to consider such evidence at this stage of the proceedings. Based upon the standards identified in *Gee*, the Court will not

---

[1]    Collateral estoppel does not apply unless (1) the issue previously decided is identical to the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. *Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000) (citations omitted).

consider Denton's exhibits that relate to the arbitration proceeding or the transport of plaintiff to the hospital and then the Jail.[2]

Only the first of Denton's exhibits, the Release of Claims (Doc. 8-1), is referenced in the Complaint and is central to the plaintiff's request for rescission of the Release of Claims, and may accordingly be considered under the rules summarized in *Gee*. The plaintiff's Complaint specifically alleges that the Release of Claims was presented to plaintiff by representatives of the City of Owasso, while plaintiff was imprisoned, suffering from psychological distress, and without the availability of fair or impartial advice or representation. (Doc. 2 at ¶ 111). Plaintiff alleges that most of the $1500 paid (a check for $1107) was then immediately taken by the City of Owasso for the payment of fines, and that the check for the balance ($493) has not been cashed. (*Id.* at ¶¶ 60, 61). Plaintiff asserts that he was thus coerced, under compulsion, deprived of free will, and entered the Release of Claims "solely due to undue influence and duress caused by the circumstances created by" the City of Owasso. (*Id.* at ¶ 113). These factual allegations, which must be accepted as true and construed in the light most favorable to plaintiff at this stage of the litigation, state a plausible claim that the Release of Claims was not informed or voluntary or that it was obtained by duress, undue influence, or coercion. Denton's motion to dismiss, which is based solely upon a request that the Court enforce the Release of Claims, is thus **denied**.

---

[2]     According to Denton's dismissal briefing, the video depicts medical treatment of the plaintiff. (Doc. 8 at 6). Upon reading that, the Court became concerned because the video was not submitted by Denton under seal. The Court reviewed a portion of the video, which contains information that is obviously covered by LCvR 5.3. The Court therefore ordered that the exhibit be sealed. (Doc. 30).

    B.     *Dismissal Motion of All Other Defendants*

The remaining defendants, City of Owasso, Owasso Police Department, Dan Yancey, Michele Dempster, Benjamin Wolery, Jonathan Foyil, and H.D. Pitt (collectively herein referred to as the City Defendants), filed a combined dismissal motion. Like Denton's motion, the dismissal motion of the City Defendants includes exhibits outside of the record. Because the Release of Claims and the checks (Doc. 7-1, 7-2) are referenced in the Complaint and are central to plaintiff's claim for rescission of that release, those may be considered under *Gee*. However, the Court will not consider the other exhibits, as they do not fall within the exceptions to the general rule that the Complaint's sufficiency should be determined on its content alone.

    1.     *Release of Claims*

Like Denton, the City Defendants argue that the Release of Claims should be enforced under *Newton*. As is discussed above, the Court cannot determine at this time that the Release of Claims is enforceable as a matter of law under *Newton*.[3]

The City Defendants also argue that the Release of Claims is enforceable under Oklahoma law, which applies to the resolution of plaintiff's state law claims. Under Oklahoma law, "an agreement to settle a claim constitutes a contract between the parties which should not

---

[3]     The Court recognizes that *Newton* was decided at the dismissal stage. However, significant evidence relating to the release-dismissal agreement, including the testimony of the prosecutor, the defense counsel, and Rumery, had been developed and was considered by the courts in *Newton*. Here, no party requested an evidentiary hearing or sought to present evidence at the hearing on the dismissal motion. The Court does not have any evidence at this time to determine, as a matter of law, that plaintiff's agreement to the release was informed and voluntary, and the Court must accept plaintiff's specific allegations that he was under duress, or was manipulated or coerced by representatives of the City of Owasso into signing the release. The Court's ruling on the Rule 12(b)(6) motions does not preclude the defendants from presenting their arguments regarding the Release of Claims in summary judgment motions, supported by evidence. However, unless the evidence establishes that there is no genuine dispute of material fact as to the voluntariness of the release, that issue will be for the jury to decide. *See, e.g.*, *Jimenez v. Brunner*, 328 F. Supp. 2d 1208, 1228 (D. Utah 2004) (issue of fact as to voluntariness of release-dismissal agreement was for the jury to determine).

be set aside absent fraud, duress, undue influence, or mistake." *Fender v. Wal-Mart Corp.*, 341 F. Supp. 2d 1193, 1195 (N.D. Okla. 2004); *see also Okla. Stat.* tit. 15, § 233(1).   The City Defendants argue that "there is no evidence of fraud, duress, undue influence, or mistake in the formation of the Release of Claims."   (Doc. 7 at 12; *see also* Doc. 27 at 3 [referencing what the "evidence reveals" in one place and alleging a lack of evidence in another]).   On a Rule 12(b)(6) motion, the plaintiff is not required to present evidence.   As noted above, the plaintiff's Complaint sets forth very specific allegations which, taken as true, state a plausible claim for rescinding and extinguishing the Release of Claims.

### 2.   *Qualified Immunity*

The individual City Defendants (Wolery, Foyil, Pitt, Yancey, and Dempster) argue that they are entitled to dismissal because plaintiff "failed to allege sufficient facts suggesting that each Individual Defendant personally participated in a violation of Plaintiff's constitutional rights, and the Individual Defendants are entitled to qualified immunity."   (Doc. 7 at 18). Individual defendants named in a § 1983 action may assert a defense of qualified immunity, which "shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law." *Estate of Booker v. Gomez*, 745 F.3d 405 (10th Cir. 2014) (quoting *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008)).   To defeat a qualified immunity defense, the plaintiff must show "(1) that the defendant's actions violated a federal constitutional or statutory right, and if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Id.* (quoting *Cillo v. City of Greenwood Village*, 739 F.3d 451, 460 (10th Cir. 2013)).   To determine whether the alleged right was clearly established, the courts "ask whether 'the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* (citation omitted).   "The plaintiff

11

is not required to show, however, that the very act in question previously was held unlawful . . . to establish an absence of qualified immunity." *Id.* (quoting *Weigel v. Broad*, 544 F.3d 1143, 1153 (10th Cir. 2008)).

a.      *Defendants Wolery, Foyil, and Pitt*

Plaintiff alleges that Officers Wolery, Foyil, Denton, and Pitt all were involved in the incidents of alleged excessive force upon the plaintiff.  (Doc. 2 at 65).  He alleges that the officers shoved him to the ground, handcuffed him, and "savagely, unreasonably, and unjustifiably assaulted and battered" him, and that some officers participated in the assault, while others watched and failed to intervene.  (Doc. 2 at ¶¶ 21-30).  According to the Complaint, plaintiff was arrested and, upon arrival at the Owasso police station, he was subjected to additional incidents of excessive force, including (1) being kicked or shoved in the back, causing plaintiff's face to hit the steps leading up to the police station, (2) stepping on plaintiff's neck while he was handcuffed and face down, (3) grabbing his handcuffed hands and pulling them up and over plaintiff's head, (4) carrying him in such a way that slammed his head into a door frame, and (5) violently elbowing plaintiff in the face three times.  (*Id.* at ¶¶ 31-46).

Plaintiff asserts excessive force claims under the Fourth and Fourteenth Amendments. Different standards govern, depending on which amendment is applicable.  The Fourth Amendment is applicable to instances of alleged excessive force "leading up to and including an arrest" under that amendment's prohibition against unreasonable seizures.  *See Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010).  A Fourth Amendment excessive force claim exists if the plaintiff can establish that "the officers used greater force than would have been reasonably necessary to effect a lawful arrest."  *See Fisher v. City of Las Cruces*, 584 F.3d 888, 893-94 (10th Cir. 2009). Claims of excessive force upon a plaintiff after arrest but before conviction (i.e.

excessive force against pretrial detainees) are analyzed under the Fourteenth Amendment. *See Porro*, 624 F.3d at 1326. In this case, plaintiff alleges excessive force leading up to and at the time of his arrest, which are analyzed under the Fourth Amendment's objective reasonableness standard. *Id.* at 1325-26. He also alleges instances of maltreatment amounting to excessive force after he was arrested and transported to the Owasso police department, which are analyzed under the Fourteenth Amendment. *Id.*; *see also Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003). To determine whether a use of force is excessive under the Fourteenth Amendment, the courts consider three factors: "(1) the relationship between the amount of force used and the need presented; (2) the extent of the injury inflicted; and (3) the motives of the state actor." *Roska*, 328 F.3d at 1243. Force inspired by malice or excessive zeal, amounting to an abuse of power that shocks the conscience, may satisfy the standard under the Fourteenth Amendment. *See id.*

The parties have not provided any analysis of these standards in relation to the allegations of excessive force in plaintiff's Complaint. The allegations of the Complaint, if true, state plausible claims of excessive force under both the Fourth and Fourteenth Amendments. Moreover, the factors to be evaluated are factually intensive inquiries which may be more appropriately addressed at the summary judgment stage after all of the evidence is developed.[4] At this point, it is enough that plaintiff's Complaint contains allegations of one or more instances of physical force and injury, which (if true) would be objectively unreasonable as well as shocking to the conscience, and unconstitutional under clearly established law. *See Robbins v.*

---

[4]      Assertions of qualified immunity are more typically addressed at the summary judgment stage, although courts will consider such assertions at the dismissal stage. *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004). Asserting a qualified immunity defense at the dismissal stage subjects the defendant raising it to a more challenging standard than would apply at the summary judgment stage. *Id.*; *Choate v. Lemmings*, 294 F. App'x 386, 390-91 (10th Cir. 2008).

*Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (at dismissal stage, to avoid qualified immunity defense, plaintiff's complaint must merely "allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights and that those rights were established at the time.").

Defendants Wolery, Foyil, and Pitt also argue that the claims against them should be dismissed because the Complaint does not allege which of them committed which specific act. The Complaint alleges that all three of them were present during the applications of excessive force and either participated in them or failed to intervene to protect plaintiff from injury.  (Doc. 2 at ¶¶ 65, 80).  The courts do not always require an individualized analysis of each officer's specific involvement in excessive force cases.  *Estate of Booker*, 745 F.3d 405 (citing cases). Thus, even if a particular officer's participation did not constitute excessive force, that officer could be held liable under a failure-to-intervene theory.  *Id.  Estate of Booker* states as follows:

> [E]ven if a single deputy's use of force was not excessive, "a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under 1983."  *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996).  Thus, even if one of the defendant deputies did not use excessive force, a reasonable jury could nonetheless find on this record that he or she violated Mr. Booker's clearly established rights by not taking steps to prevent other deputies' excessive force.  *Mascorro v. Billings*, 656 F.3d 1198, 1204 n.5 (10th Cir. 2011) ("It is not necessary that a police officer actually participate in the use of excessive force in order to be held liable under section 1983.  Rather, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for nonfeasance.").  In *Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008), we affirmed the district court's denial of qualified immunity on a failure to intervene claim because the defendant was present during the allegedly unconstitutional arrest, which lasted "between three and five minutes."  *Id.* at 1164.  Here, Plaintiffs alleged and the video confirmed that all of the Defendants were present and observed the entire use of force over a two-to-three minute period.  Because "Plaintiffs presented evidence suggesting that [the Defendants] could have prevented or stopped" the assault on Mr. Booker . . . a reasonable jury could find any given defendant here liable for failing to intervene.

*Id.*

Plaintiffs in this case have specifically averred that each of the individual officers present on June 30, 2011 directly participated in brutality and/or failed to intervene to protect the plaintiff.  At this stage, that is enough to state a claim under § 1983 against each of them.

b.      Chief Yancey

Chief Yancey also asserts that plaintiff's § 1983 claim against him should be dismissed based upon qualified immunity.  A defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability.  *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011).  Section 1983 does not permit respondeat superior liability to be imposed upon a supervisor, but requires some action by the supervisor.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("each Government official, his or her title notwithstanding, is only liable for his or her own misconduct").  Section 1983 "allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which 'subjects, or causes to be subjected' that plaintiff 'to the deprivation of any rights . . . secured by the Constitution. . . .'"  *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (quoting 42 U.S.C. § 1983).  A plaintiff may establish § 1983 liability of a defendant-supervisor by demonstrating that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."  *Id.*

Plaintiff does not allege that Yancey was involved in the incidents which constitute the excessive force claims, and plaintiff does not explain how any action by Yancey personally caused the alleged constitutional violation.  While plaintiff asserts that he has sued Yancey in

both his individual and official capacities (Doc. 2 at ¶ 9), Count One (the § 1983 claim against Yancey) only references Yancey in his "official capacity" (*id.* at ¶ 71).  It does not appear that the Complaint states a § 1983 claim for individual liability against Chief Yancey for the alleged excessive force.  There is no description of personal involvement of any kind, or that he witnessed the alleged excessive force but failed to intervene, and the Complaint does not contain allegations that would satisfy the requirements of *Iqbal* or *Dodds*.  Accordingly, to the extent that plaintiff intended to assert a § 1983 claim for excessive force against Chief Yancey, in his individual capacity, that claim is **dismissed**.[5]

> *c.*     *Defendant Dempster*

Plaintiff does not allege that Dempster was involved in any way in his arrest or the alleged excessive force.  It also does not appear that plaintiff has attempted to state a § 1983 claim against Dempster based upon the presentation of the Release of Claims to plaintiff at the Tulsa County Jail.  In the absence of legal authority that such conduct violated plaintiff's constitutional rights and that those rights were clearly established at the time the release was signed, Dempster would be entitled to qualified immunity on any § 1983 claim.  Thus, any § 1983 claims which plaintiff has attempted to assert against Dempster are **dismissed**.

> *3.*     *Governmental Tort Claims*

The individual defendants argue that the Court should dismiss plaintiff's third, fourth and seventh claims against them, pursuant to the Oklahoma Governmental Tort Claims Act (GTCA).  The GTCA provides that political subdivisions of the state, and all of their employees acting within the scope of their employment, are immune from liability for torts.  *Okla. Stat.* tit 51, §

---

[5]     Other than asserting that the Release of Claims bars all claims against them, Yancey does not argue that the § 1983 official capacity claim against him should be dismissed, and the City likewise does not argue that the plaintiff's § 1983 claims should be dismissed against it.

152.1(A).  However, the state waives its immunity and the immunity of its political subdivisions in accordance with the GTCA.  *Id.* § 152.1(B).  Thus, the state or a political subdivision are liable for losses resulting from its torts or the torts of its employees acting within the scope of their employment, subject to certain exceptions.  *Id.* § 153(A).  They are not liable for torts of employees that are committed while acting outside the scope of employment.  *Id.*  "Scope of employment" is defined as "performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority...."  *Id.* § 152(12).  Thus, government employees are shielded from tort liability while carrying out their duties in good faith.  *See id.* §§ 152.1, 152(12).

Under some circumstances, assaults committed by government employees may be found to be within the scope of employment.  *See Bosh v. Cherokee County Bldg. Auth.*, 305 P.3d 994, 999 (Okla. 2013).  But willful and wanton tortious actions by government employees may be found not to have been in "good faith" or within the scope of employment under the GTCA.  For example, in *Houston v. Reich*, 932 F.2d 883, 890 (10th Cir. 1991), a plaintiff brought civil rights claims against a city and two police officers, alleging that the police officers beat the plaintiff without provocation, while acting as police officers of the city.  The court held that, because the jury awarded punitive damages against the two police officers, having found that their conduct amounted to willful and wanton conduct, those police officers forfeited their immunity from liability under the GTCA.  *Id.* at 890.[6]  Other willful and wanton acts by government employees

---

[6]    *Houston v. Reich* was decided with respect to § 1983.  Subsequent to that decision, the Tenth Circuit held that a "§ 1983 claim may be available, even though a state remedy is foreclosed by the [GTCA]," *Tiemann v. Tul-Ctr., Inc.*, 18 F.3d 851, 853 (10th Cir. 1994), and that the GTCA does not immunize a defendant from liability under § 1983.  *Beck v. Muskogee Police Dept.*, 195 F.3d 553, 560 n.5 (10th Cir. 1999).  Although the *Houston* court applied GTCA immunity concepts to a § 1983 claim, which was unnecessary, that court's conclusion

have been found to remove such actions from the scope of employment, subjecting individual employees to tort claim liability.  *See, e.g., Stevenson v. Independent School Dist. No. I-038 of Garvin County*, 393 F. Supp. 2d 1148 (W.D. Okla. 2005) (allegation of complaint that teacher intentionally starved a special education child as punishment, if true, was the type of behavior a jury could find was willful and wanton and thus, outside the scope of employment).

Here, the allegations of the Complaint include assertions that the individual officers acted "savagely, unreasonably, and unjustifiably assaulted and battered" the plaintiff, violently kicked or shoved him, elbowed plaintiff in the face three times, punched him, and otherwise acted with brutality towards the plaintiff, without justification.  (Doc. 2 at ¶¶ 25-26, 34, 41, 95).  Plaintiff also requests punitive damages (*id.* at 15), which may infer conduct that was *not* in good faith.[7] On the other hand, the Complaint also expressly alleges that all of the officers were acting in the scope of their employment when they used unnecessary and excessive force.  (*Id.* at ¶ 67).  While these allegations may appear inconsistent, at the pleading stage, the plaintiff is permitted to plead in the alternative, "regardless of consistency."  Fed. R. Civ. P. 8(d)(2), (3).  The allegations of the Complaint include behaviors that a jury could find were willful and wanton and thus, outside the scope of the employment of one or more of the individual officers, and the Complaint asserts a plausible basis for punitive damages against the individual officers in their individual

_____

that individual police officers may waive their GTCA immunity by acting willfully and wantonly remains persuasive reasoning when applied to state tort claims.

[7]      Punitive damages are not recoverable against the City of Owasso under § 1983 or the GTCA.  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Okla. Stat.* tit. 51, § 154(C).  To obtain punitive damages under § 1983 against individual officers, a plaintiff must establish that the officers' conduct was motivated by evil motive or intent, or involved reckless indifference to federally-protected rights.  *See Smith v. Wade*, 461 U.S. 30, 56 (1983).  Similarly, to obtain punitive damages on any state law tort claims against individual defendants, a party must establish conduct in reckless disregard for the rights of others or acts done intentionally and with malice.  *See Okla. Stat.* tit. 23, § 9.1.

capacities, for conduct that was allegedly in reckless disregard or was intentional and malicious. Thus, notwithstanding the inconsistent allegations, the Complaint states plausible tort claims against the individual defendant officers involved in the arrest and incidents at the Owasso jail (Wolery, Foyil, Denton, and Pitt) for which those officers may not be immune under the GTCA. *See Houston* and *Stevenson*, discussed *supra*.  The dismissal motion of Wolery, Foyil, and Pitt on this ground is **denied**.

However, the tort allegations of the Complaint do *not* identify any conduct by defendants Yancey or Dempster that would fall outside the scope of their employment with the City of Owasso.  Rather, the Complaint alleges only generally that Yancey was negligent in his supervision and training and that Yancey and that Dempster presented the Release of Claims to plaintiff.  With respect to the presentation of the Release of Claims, plaintiff has not cited any legal authority for the proposition that such conduct constitutes an actionable tort.  In any event, absent allegations that would support a finding that Yancey and Dempster acted outside the scope of their employment, plaintiff has failed to state any plausible tort claims against Yancey and Dempster, because they would be immune under the GTCA.  Accordingly, the tort claims against Yancey and Dempster are **dismissed**.

4.    *Timeliness of Assault and Battery Claim*

Defendants argue that plaintiff's claim for assault and battery is untimely under the one year general statute of limitations for such claims, *Okla. Stat.* tit. 12, § 95(A)(4), because the Complaint alleges that plaintiff's injuries arose on June 30, 2011, the date of plaintiff's arrest, and plaintiff did not initiate this suit until August 31, 2012, over one year later.  As the defendants point out, the assault and battery claim (Count Five) appears to be directed to the individual officers involved in the incidents of physical force resulting in injury upon the

plaintiff.  (*See* Doc. 2 at ¶¶ 94-97).  However, plaintiff also alleges that the City is vicariously liable for the officers' conduct.  (*Id.* at ¶ 108).  If the officers were acting within the scope of their employment, such that the GTCA provides the officers immunity but subjects the City to respondeat superior liability for those officers' actions under the GTCA, the limitations period of the GTCA, rather than the general one year statute of limitations at *Okla. Stat.* tit. 12, § 95(A)(4) applies.  *See Powell v. Nunley*, 682 F. Supp. 2d 1260, 1273 (W.D. Okla. 2010).  Thus, to the extent the assault and battery claim is asserted against the City of Owasso pursuant to the GTCA for the acts of its police officers, the City has not established that the claim is untimely under the GTCA limitations period, which provides that notice of a tort claim against a political subdivision must be provided within one year after the loss occurs, and suit must be filed within 180 days after the political subdivision's denial of the claim.  *See Okla. Stat.* tit. 51, §§ 156, 157.

While the assault and battery claim does not fail to the extent it is asserted against the City, that tort claim may not be maintained against the individual officer defendants under the allegations in the Complaint.  As noted above, if they were acting within the scope of their employment, the individual officers are immune from suit under the GTCA.  If they were *not* acting within the scope of their employment, then the GTCA does not apply, and the common law assault and battery claims brought against them more than one year after the incidents of June 30, 2011 would be time-barred.  Either way, that claim cannot be maintained against the individual defendants under the allegations in the Complaint.

   5.   *Claim for Intentional Infliction of Emotional Distress*

In response to the motion to dismiss the claim for intentional infliction of emotional distress, plaintiff agreed to withdraw that claim.  Accordingly, that claim is **dismissed**.

6.      *Oklahoma Constitution*

The Complaint generally alleges a violation "under the State of Oklahoma Constitution to be free from excessive, unnecessary, and unreasonable force by a municipal policing entity. . . ." (Doc. 2 at ¶ 66).  However, plaintiff did not identify any particular claim or count arising under the Oklahoma Constitution or cite a particular constitutional provision.  While *Bosh v. Cherokee County Bldg. Auth.*, 305 P.3d 994 (Okla. 2013) identified a state constitutional cause of action under certain circumstances, that case was decided after plaintiff filed his Complaint and after the dismissal briefing in this case.[8]  The current Complaint does not state a claim under *Bosh*, nor does it identify the specific source of *any* claim under the Oklahoma Constitution.  To the extent that the Complaint attempted to state a claim under the state Constitution, it is deficient and any such claim is **dismissed**.

**IV.    Conclusion**

For the foregoing reasons, defendant Mike Denton's dismissal motion (Doc. 8) is **denied**, and the City Defendants' dismissal motion (Doc. 7) is **granted in part and denied in part**, as set forth more specifically above.  Where claims have been dismissed, the dismissal is without prejudice, and plaintiff may amend his Complaint within 14 days to attempt to cure any deficiencies.

DATED this 25th day of April, 2014.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

---

[8]     The Oklahoma Supreme Court determined that *Bosh* is retroactively applicable, within the specific parameters described therein.  305 P.3d at 1002.